UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| DAVID A. YOUNGBLOOD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:19-CV-28 RLW |
| ) | |
| CORIZON, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of plaintiff (registration no. 47281), an inmate at Southeast Correctional Center ("SECC"), for leave to commence this action without payment of the required filing fee. For the reasons stated below, the Court finds that the plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the complaint, the Court will partially dismiss the complaint and will order the Clerk to issue process or cause process to be issued on the non-frivolous portions of the complaint.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these

monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has not submitted a prison account statement. As a result, the Court will require plaintiff to pay an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances."). If plaintiff is unable to pay the initial partial filing fee, he must submit a copy of his prison account statement in support of his claim.

## 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. An action is frivolous if it lacks an arguable basis in either law or fact. *Neitzke v. Williams*, 490 U.S. 319, 328 (1989); *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). An action is malicious if it is undertaken for the purpose of harassing the named defendants and not for the purpose of vindicating a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), *aff'd* 826 F.2d 1059 (4th Cir. 1987). A complaint fails to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Id.* at 1949. Second, the

Court must determine whether the complaint states a plausible claim for relief. *Id.* at 1950-51. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." *Id.* The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred. *Id.* at 1950, 1951-52.

## The Complaint

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights. Plaintiff names the following individuals as defendants in this action: Corizon; J. Cofield (Medical Director); Southeast Correctional Center; Molly Unknown (Director of Nursing); Briana Unknown (Nurse); Jason Unknown (Nurse); Jackie Unknown (Nurse); Linda Unknown (Nurse); Dr. Unknown Tipton; Roxanne Unknown (Director of Nursing); T. Bredeman (Director of Medical Care). Plaintiff brings this action against the defendants in both their individual and official capacities.[1]

### A. Plaintiff's Attempts to Seek Medical Care for Kidney Pain

Plaintiff asserts that in April of 2018, he began having sharp pains on his left and right sides. After withstanding the pains for three days, he self-declared a medical emergency. He states that Nurse Jason told him it was probably a urinary tract infection but "didn't do anything" and sent him back to his housing unit.

---

[1] Plaintiff's handwriting is difficult to read, however, it appears that plaintiff is attempting to bring his complaint against defendants in their official and individual capacities.

Plaintiff states a day later, he again self-declared a medical emergency and saw Nurse Linda, who took his vitals and stated his call was "not an emergency" and sent him back to his housing unit.

Plaintiff claims that the next day, he again self-declared a medical emergency, and he saw Nurse Lameda, who examined him and did a urinalysis and found blood in his urine. She then called the on-call doctor who told Nurse Lameda to give him a pain shot and set him up with the Nurse Practitioner, Ms. Rebecca Graham, on Monday.

Plaintiff asserts that "someone took him off the list to see Ms. Rebecca Graham," so he went to sick call to see Nurse Jackie, who found blood in his urine, but then told the other nurses he was "faking." Plaintiff states that the next day, his custody officer told him to self-declare a medical emergency, and he saw Nurse Briana, who took his vitals and said there was no emergency and left. At this time, plaintiff states he was in debilitating pain, vomiting everything he drank, could not eat, and could not walk to the dining room.

Plaintiff alleges that one week after he first went to sick call, he saw Ms. Rebecca Graham who examined him for just a few moments and got Dr. Tipton, and they both decided he should be in the critical care unit at the prison. However, they sent him back to his housing unit because there was no bed in TCU at that time. Plaintiff states that within an hour, they had decided to send him to the hospital, where they found out he had a 9 mm kidney stone and that his "left kidney had died." Plaintiff states that the doctor at Missouri Delta did surgery to place a stent in his right kidney and placed him on antibiotics, and he went into A-Fib on the way back to the prison. Plaintiff claims that back at the hospital he was placed on blood thinners, and he eventually ended up with blood clots in his lungs and his legs. Eventually plaintiff underwent a second surgery to attempt to break up the kidney stone. After the second surgery, plaintiff claims he was placed back on blood thinners and taken back to SECC for care.

### B. Post-Surgical Care

Plaintiff asserts that after his second surgery he began throwing up blood and passing blood through his catheter. Plaintiff states, generally, "the nurses" told him this issue was because of the kidney stone; however, he alleges that he told the unnamed nurses that he had bruising all down his back with a big knot on his back. Plaintiff claims Nurse Lameda came in to examine him and told Ms. Graham to look, and he was then sent back to the hospital, at which time it was found he had internal bleeding. Plaintiff asserts he had two additional surgeries after this time: a blood clot filter, as well as a surgery to remove the kidney stent.

Plaintiff seeks injunctive relief and compensatory damages in this action.

### Discussion

The Eighth Amendment protects plaintiff from a confinement that involves cruel and unusual punishment through deliberate indifference to his serious medical needs. Deliberate indifference may be demonstrated by prison officials who intentionally deny or delay access to medical care. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).

To prevail on a deliberate indifference claim, plaintiff must demonstrate that he suffered from an objectively serious medical need, and that defendants knew of but deliberately disregarded such need. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). A "serious medical need" as "one that has been diagnosed by a physician requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011).

The Court will issue process on the following defendants for either a delay in treatment and/or deliberate indifference to plaintiff's serious medical needs: Briana Unknown, Jason Unknown, Jackie Unknown and Linda Unknown.

By the end of April 2018, plaintiff had purportedly suffered with kidney pain for over an entire week. He had reported to medical six times for the issue, and he reported that his pain had increased severely, he was vomiting, could not walk, could not eat, and could not keep food or liquids down. He also reported that the pain was debilitating. Moreover, according to his allegations, which the Court must take as true, as early as the first visit to medical, defendants knew that plaintiff had at the very least a urinary tract infection, but he was not provided with antibiotics, nor was his urine tested on the first visit with Nurse Jason. Moreover, when his urine was tested on the third visit and blood was found in his urine, someone took him off the list to see the Nurse Practitioner, and he was told he was faking it, until he finally had the good fortune to see the Nurse Practitioner in person on the sixth day, after he had lost a kidney.

Plaintiff has not stated enough in his allegations to make a claim for relief against supervisors Dr. Tipton, T. Bredeman (Medical Director), J. Cofield (Medical Director), Roxanne Unknown (Director of Nursing) or Molly Unknown (Director of Nursing).

Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights. *Madewell v. Roberts,* 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent,* 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff); *Boyd v. Knox,* 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits). It appears plaintiff believes that these individuals should be liable for what occurred to him because they are supervisors of medical operations at either Corizon or MDOC. Plaintiff has not set forth any facts indicating that any of the named defendants were directly involved in or personally responsible for the alleged violations of his constitutional rights. And general responsibility for supervisory responsibilities cannot establish personal involvement. *See, e.g., Keeper v. King,* 130 F.3d 1309, 1314 (8th Cir. 1997) (noting that

general responsibility for supervising operations of prison is insufficient to establish personal involvement required to support liability under § 1983); *Woods v. Goord,* 1998 WL 740782, at *6) (S.D.N.Y. October 23, 1998) (receiving letters or complaints does not render prison officials personally liable under § 1983).[2] As a result, the complaint fails to state a claim upon which relief can be granted with respect to defendants Dr. Tipton, Cofield, Bredeman and Roxanne Unknown.

The Court will dismiss plaintiff's claim against Corizon, plaintiff's claims against SECC, as well as plaintiff's claims against defendants in their official capacities.

Naming a MDOC defendant, in his or her official capacity is the equivalent of also making a claim against the State of Missouri. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). "[N]either a State nor its officials acting in their official capacity are 'persons' under § 1983." *Id.* As a result, the complaint fails to state a claim upon which relief can be granted against an individual employed by the Missouri Department of Corrections[3] in his or her official capacity.[4]

To state a claim against Corizon employees in their official capacities, plaintiff must allege that a policy or custom of Corizon is responsible for the alleged constitutional violations. *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91 (1978). The instant complaint does not

---

[2]Plaintiff's conclusory statements that Cofield and Bredeman were responsible for reviewing grievance appeals throughout the region should make them liable for the alleged constitutional violations in this instance are without merit. Supervisory defendants like Cofield and Bredeman cannot be held vicariously liable under § 1983 for the actions of a subordinate. *See Iqbal,* 129 S. Ct. at 1948. To state a claim, the plaintiff must plead that the supervising official, through his or her own individual actions, has violated the Constitution. *Id.* Where, as here, the alleged constitutional violation requires proof of an impermissible motive, the complaint must allege adequately that the defendant acted with such impermissible purpose, not merely that he or she knew of a subordinate's motive. *Id.*

[3]The Court believes J. Cofield and T. Bredeman are employees of the Missouri Department of Corrections.

[4] The complaint also fails to state a claim against SECC for this same reason.

contain any allegations that a policy or custom of Corizon was responsible for the alleged violations of plaintiff's constitutional rights. As a result, the complaint fails to state a claim upon which relief can be granted against the defendants employed by Corizon in their official capacities.[5]

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. #2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $30.82 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that if plaintiff fails to pay the initial partial filing fee within thirty (30) days of the date of this Order, then this case will be dismissed without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's motion for extension of time to file his account statement [Doc. #6] is **DENIED as moot**.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the complaint as to defendant Nurses at SECC Briana Unknown, Jason Unknown, Jackie Unknown and Linda Unknown in their individual capacities by serving them through the waiver agreement the Court maintains with Corizon, LLC. **Because these defendants were all serving as nurses at SECC in the month of April 2018, Corizon should be able to identify**

---

[5] These defendants include: Molly Unknown; Briana Unknown; Jason Unknown; Jackie Unknown; Linda Unknown; Dr. Unknown Tipton; and Roxann Unknown.

**these defendants by their first names only. If counsel for Corizon is not able to identify defendants by their first names they should notify the Court forthwith.**

**IT IS FURTHER ORDERED** that, pursuant to 42 U.S.C. § 1997e(g)(2), defendant SECC Nurses Briana Unknown, Jason Unknown, Jackie Unknown and Linda Unknown shall reply to plaintiff's claims within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint as to defendants Molly Unknown, Dr. Unknown Tipton, Roxann Unknown, J. Cofield, T. Bredeman, SECC and Corizon because as to these defendants, the complaint is legally frivolous or fails to state a claim upon which relief may be granted, or both.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint as to defendants Briana Unknown, Jason Unknown, Jackie Unknown, Linda Unknown in their official capacities because, as to these claims, the complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both.

**IT IS FURTHER ORDERED** that this case is assigned to Track 5: Prisoner Standard.

An Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 4th day of September, 2019.

RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE